IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

**Case No. 9:15-cv-81520-KAM**

UNITED STATES OF AMERICA and
the STATE OF FLORIDA *et rel.*
DANIEL YARBROUGH and *ex rel.*
CODI FLETCHER,

      Plaintiffs,

vs.

AM-MED DIABETIC SUPPLIES, INC. d/b/a
BEYOND MEDICAL USA, DAVID SOBLICK,
KEITH ARONOFF, CHRISTIAN MCKEON,
MBKD, LLC, ROBIN SOBLICK, DOES 1-100,
and AJT DIABETIC, INC., d/b/a
COUNTRYWIDE MEDICAL,

      Defendants.

_____/

**DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND
MEMORANDUM OF LAW IN SUPPORT OF THE MOTION**

Defendants AM-Med Diabetic Supplies, Inc. d/b/a Beyond Medical USA; David Soblick,

Keith Aronoff; Robin Soblick; MBKD, LLC; and AJT Diabetic, Inc. d/b/a Countrywide Medical

("Defendants") move this Court for an order directing Relators Yarbrough and Fletcher and their

counsel to stop disseminating extrajudicial statements and to stop publicly sharing Medicare

beneficiaries' Protected Health Information ("PHI"), and directing counsel to remove Facebook

and website posts containing extrajudicial statements and PHI.

## **INTRODUCTION**

Relators Yarbrough and Fletcher and their counsel have embarked on a media campaign sharing evidence and disseminating extrajudicial statements to news stations in violation of the local rules and potentially in violation of federal privacy laws.

News stations have repeatedly published documents on television, social media, and their websites that, even though partially redacted, still reveal the identity of the patients.  One Facebook post has been viewed more than 10,000 times at the time of this filing. If these documents were obtained from Defendant AM-Med in violation of its policies and improperly removed by Relators, the publication of PHI violates those patients' privacy rights and must be stopped.

Relators' counsel have participated in the dissemination of the information in question by sharing it through their law firm website and Facebook account. Defendants ask the Court to direct Relators and their counsel to stop the dissemination and, to the extent it is within their control, to remove publications containing protected information.

Further, Relators' and their counsel's media campaign interferes with Defendants' fundamental right to a fair jury trial and violates Local Rule 77.2(g) and Rule 4-3.6 of the Rules Regulating The Florida Bar. Thus, Defendants request an appropriately tailored order directing Relators, their counsel, and their agents to cease facilitating the dissemination of evidence, and information that unfairly attacks the character and credibility of the parties or any witnesses, and to recover documents and evidence they have shared with others including the news media.

Because this case is brought under the False Claims Act and therefore is quasi-criminal in nature, and because Relators have brought this case in the name of the United States Government, compliance with the rules and reinforcement of the obligations Relators and their counsel have undertaken in this case are particularly important.

**FACTS**

**RELATORS AND THEIR COUNSEL HAVE LAUNCHED A
MEDIA CAMPAIGN TO "CONTROL THE FACTS"**

This Court recently stayed discovery in this action pending the resolution of Defendants'

motion to dismiss. (DE 76) (Order).  The purpose behind staying discovery in False Claims Act

cases until a motion to dismiss has been resolved is to discourage "wannabe" relators from bringing

an action—in the hopes that they can later piece a claim together through discovery— that is "at

best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract

settlements." *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006)

(quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 n.24 (11th Cir.

2002)); *see also* (DE 75 at 4-5) (Motion to Stay Discovery).

Instead of simply amending their pleading and supplying more facts to cure their pleading

deficiencies, Relators have revealed themselves to belong in the "baseless allegations used to

extract settlements" category, by launching a media campaign presenting a disparaging narrative

to the public, the potential jury pool.[1]

The public relations strategy includes Relators and their counsel being interviewed by an

"investigative reporter," and the resulting video and "investigative report" have now been

published multiple times through various media, including television, news station websites, social

media, and even Relators' counsel's law firm website and Facebook page. (*See infra*).  The story

is presented in an emotionally charged fashion that in addition to the interview with Relators

includes video clips of a Medicare beneficiary on oxygen therapy, and dramatic statements by

news show hosts that Defendants are "targeting your parents and grandparents." Relators'

---

[1]      This is particularly troubling in light of the dearth of allegations against a number of the Defendants including
AJT Diabetic, Inc. d/b/a Countrywide Medical, as previously raised in Defendants' Motion to Dismiss the Amended
Complaint (DE 60), and Reply in support (DE 77).

counsel—who participated in the interview—posted links on the law firm's website and social media to these "investigative reports." Those social media posts reiterate some of the most inflammatory statements, including claiming Defendants are: "endlessly harassing patients" and "costing taxpayers billions of dollars," without any disclaimer to make it clear that the allegations are indeed just that—allegations that have yet to be proven—rather than actual facts:



James Hoyer, P.A.'s Facebook account,
*available at* https://www.facebook.com/jameshoyerlawfirm/ ; *see also* Exh. 1.

Relators' counsel also features the news story on the homepage of its law firm's website (*see* Exh. 2), and on a separate page of its website (*see* Exh. 3). Relators' counsel in an interview with Katie LaGrone, the investigative reporter, explained that: "this whistleblower case is shining a light on this troubling issue." *See* Exh. 3. Counsel further explains that the investigative report "presents a compelling report on how this nationwide problem takes advantage of patients and taxpayers." *Id.* Relators' counsel's website links to three news stations' websites that each posts Katie LaGrone's "investigative report" and its accompanying video. *Id.* The three news stations cover widespread geographic areas:  WPTV TV in West Palm Beach; Fox4 in Tallahassee; and ABC Action News in Tampa. *Id.*

Each of the three stories was posted in early October and updated at various times throughout October and November:

**WPTV TV 5 West Palm Beach**      Posted **October 9, 2018**, updated **October 10, 2018**
*Available at:*   https://www.wptv.com/news/local-news/investigations/insiders-reveal-secrets-of-medical-scam-targeting-thousands-of-floridians

Attached as **Exhibit 4.**

**Fox4 in Tallahassee**                Posted **October 9, 2018**, updated **November 6, 2018**
*Available at:*   https://www.fox4now.com/news/4-in-your-corner/insiders-reveal-secrets-of-medical-scam-targeting-thousands-of-floridians

Attached as **Exhibit 5.**

**ABC Action News Tampa**         Posted **October 9, 2018**, updated **October 16, 2018**
*Available at:*   https://www.abcactionnews.com/news/local-news/i-team-investigates/insiders-reveal-secrets-of-medical-device-scam-targeting-thousands-of-floridians

Attached as **Exhibit 6.**

Each news story features the same written narrative and is accompanied by a video introduced by each news show host who uses the same script and inserts the corresponding show's name. That introduction—in part—says: "It's your money, and '4 in your corner' has discovered its being used to carry out a nationwide multi-million dollar medical scam . . . [and] your parents and your grandparents are the primary target." *See e.g.* Video in link on Fox 4 *supra*, *see also* Exhs. 4-6.

The "investigative report" features two Medicare or Medicaid beneficiaries who claim to have received phone calls from Durable Medical Equipment companies. *Id.* The "investigative report" and the video present the two beneficiaries in an emotionally charged narrative, and states: "Terry Combs is 63-years-old but feels more like '85' he told us recently from his Bradenton, FL home. 'I can't do nearly nothing. When I walk I lose my breath,' he said with his oxygen tank nearby." *Id.* The story goes on: "Shantell Williams got the calls too. 'Harassing, harassing harassing,' she described the calls." *Id.* The report interjects highly inflammatory commentary such as: "It's happening around the country. Medical supply companies that call Medicare patients to pitch unwanted medical devices, ship them those supplies and get the government to pay the bill." *Id.*

The news report shifts to the interview with Relators who also appear in the video. In the written "investigative report," Relator Fletcher states that: "he also knew what they were doing was wrong," and that they "used to have a joke in the office, calling people Robocop because we sold them so many products." *Id.* Relator Yarbrough said: "It was easy." *Id.* In the caption to one of the pictures in the written report, both Relators "describe how they falsified patient records for a former employer their [sic] now suing." (Exhs. 4-6). That apparent admission is not contained in the Second Amended Complaint. (*See* DE 5). The "investigative report" presents the Relators'

narrative as if they were facts "uncovered" as part of the "investigative reporting" without any disclaimer explaining that these statements are merely allegations made in a law suit that have yet to withstand a motion to dismiss—let alone been proven.

The news stations also post their "investigative reports" on their social media accounts. In following the trail posted by just one of the news station—ABC Action News—the investigative report has been published and republished multiple times:



ABC Action News I-Team Facebook account, *available at*
https://www.facebook.com/ITeamActionNews/ ; *see also* Exh. 7.

At the time of filing, this one post had more than 10,000 views. *Id.*  The "click-bait" tag line claims:

> Exposing a nationwide multi-million dollar medical scam. If you pay
> taxes they took your money. Tonight rare access, Katie LaGrone FL
> Investigates talks to people who took part in the scam.  Taking you
> inside the secrets of medical device fraud. #healthcare #medical #fraud
> Coming up at 5pm on ABC Action News – WFTS – Tampa Bay.
>
> ***
>
> MEDICAL SCAM | It's your money and we've discovered it's being
> used to carry out a nationwide, multi-million dollar medical scam.

*Id.* Nowhere in these posts or in the video or written "report" do Relators, their counsel, or the "investigative journalist" disclose that the Government investigated this matter for two years—after Relators filed their complaint—but declined to pursue Relators' allegations, instead Relators are proceeding with the action, but have now taken their allegations to the media. No disclaimer of any nature is posted identifying these statements as mere allegations. Instead, they are presented as facts "revealed in an investigation."

The report attempts to legitimize its "findings" by obtaining comments from a physician, Dr. Silverfield—an internist—who is unrelated to the matter, but who apparently admits to "unknowingly perpetuate medical device fraud," which "has become so rampant at his office." Exhs. 4-6. Dr. Silverfield states: "Often doctors and I'm guilty of it myself, do what's called 'zombie signing.'  You've got a whole bunch of records [to sign].  What can the harm be." *Id.*  Dr. Silverfield also opines that: "These companies are gaming the system because they know if they send out enough of these [forms] to doctors many of them will come back signed." *Id.*

The entire "investigative report" concludes by tying the foregoing "revelations" about the "harassing calls" by durable medical equipment providers to Defendant AM-Med, when Terry Combs claims he eventually "received pain cream and a back brace from Am-med." *Id.*

The effect on the public can readily be discerned from the "reactions" to the Facebook posts that range from "likes" to "angry" emoticons, as well as the comment posted in response to

one of the Facebook posts, where a person viewing the Facebook post jumps to the following conclusion:

> It's about time someone looked into this. After the way Hover round ripped off the Gov. one would have thought there would have been more interest, by the watch dogs, to stop this fraud before it get's going. Bad enough when a person needs medical equipment, and has no insurance that pays for it. I mean, knee braces, back braces. Ads running day and night, just have your medcard in your hand and call we will get you approved. I thought that was up to your doctor…………Stupid me.!

Comment to Oct. 15, 2018 Facebook post *available at* https://www.facebook.com/ITeamActionNews/  *See also* Exh. 7 at p. 2.[2]

Each of the videos also contain clips that show the pleadings and motions filed in this case that identify the Defendants. *See* Exh. 4-6, 16. Those documents are shown together with what appears to be documentary evidence in this action. *Id.* The additional documents appear to be prescriptions and other documents that identify Defendant AM-Med Diabetic Supplies, Inc. d/b/a Beyond Medical USA. (Exh. 16). Those documents identify patients by name, patient Identification Numbers, prescription numbers, their doctor's name, phone numbers, dates and other identifying information. *Id.* The parties have not exchanged any discovery in this action as discovery was stayed. (DE 76) (Order).  As addressed further below, to the extent these documents were removed from AM-Med's office in violation of company policies—and shared with the news stations—the publication of this information likely violate those patients' privacy rights under Federal laws.

Another Facebook post with a different video—viewed nearly 7,000 times—links to another "report" that contains a link to the Relators' interview, and the original video it reposts in

---

[2]      Presumably, the person opining on the Facebook post is referring to a matter addressed in 2015 by the Department of Health and Human Services, Office of Inspector General in a report concerning a company claiming "Reimbursement for Power Mobility Devices that did not meet Medicare Requirements." *See* https://oig.hhs.gov/oas/reports/region5/51200057.pdf

the below post was titled MEDICAL EQUIPMENT FRAUD IN FLORIDA and was shared 12

times and had eight similarly opinionated comments associated with it. (*See* below for post and

Exh. 8 for comments).  Eight other persons "reacted" to the Facebook post by indicating their

reactions varying from "liking" the post to indicating being "angry." *Id.*



November 1, 2018 ABC Action News I-Team Facebook post linking to ABC Action News'
Facebook post, which links to original "investigative report" on ABS News, *available at*
https://www.facebook.com/ITeamActionNews/

Later ABC Action News Facebook posts link to news stories that link to the Investigative Report and keep the report in active circulation. *See* Nov. 8, 2018 Facebook post with links. (Exh. 9), and ABC Acton News story with link to Investigative Report (Exh. 10).

Relators counsel does not shy away from its participation in this media campaign. On its law firm website, it assures wannabe relators that it has a media team in place to "control the facts," and to give the case "unparalleled authority":

---

### The James Hoyer Difference

We believe getting control of the facts is the best game plan for success. Unlike other law firms, we have the unique staff and experience to deliver on this vision.

James Hoyer's full-time **investigators and our Emmy-winning media team** give your *qui tam whistleblower* case unparalleled authority.

---

*Available at* http://www.jameshoyer.com/  (last visited Nov. 19, 2018); *see also* Exh. 2 at p.2.

Relators' counsel employs a three-person "Investigators & Media Team" including Angie Moreschi, a "national award-winning producer, reporter and anchor," who is the law firm's Communications Director and Investigative Producer." Angie Moreschi, James Hoyer, PA's website, *available at* http://www.jameshoyer.com/who-we-are/investigators-media-team/angie-moreschi/ ; *see also* Exh. 11.

Ms. Moreschi "is the host and producer of a weekly consumer segment on Bay News 9 in Tampa and Central Florida News 13 in Orlando." *Id.* According to Relators' counsel, "Angie's contacts" have resulted in "national and local media coverage of our cases," including "stories on our cases with local and national media outlets, including ABC News, CBS News, CNN, National Public Radio, the Associated Press, Forbes and USA Today." *Id.*

It is unknown if Katie LaGrone, the investigative reporter behind the reports, is part of the media team employed by James Hoyer, P.A., but Ms. LaGrone is also a "Multi-Media Investigative Reporter with WPTV Newschannel 5 in West Palm Beach, where she has worked for more than eight years. (*See* Katie LaGrone, LinkedIn Bio, *available at* https://www.linkedin.com/in/katie-lagrone-8bb16694/).

These examples follow the trail of only one news station's social media posts across their two Facebook accounts (ABC Action News I-Team and ABC Action News) and the Relators' counsel's posts, but it shows the magnitude of the thousands of people who have viewed the videos, and the many viewers that have shared the videos. In addition, Exhibits 12-15 show examples of the circulation of the "investigative report" on other social media platforms such as Twitter and YouTube.

## MEMORANDUM OF LAW

**I.     RELATORS AND THEIR COUNSEL'S EXTRAJUDICIAL STATEMENTS VIOLATE LOCAL RULE 77.2(g) AND R. 4-3.6, RULES REGULATING THE FLORIDA BAR, AND INTERFERE WITH DEFENDANTS' RIGHT TO AN IMPARTIAL JURY**

The right to a fair trial is "the most fundamental of all freedoms and one which must be preserved at all costs," and "it is the responsibility of the judicial branch to ensure that parties receive a fair trial." *See Fla. Freedom Newspapers, Inc. v. McCrary*, 520 So. 2d 32, 34 (Fla. 1988) (citing *Estes v. Texas*, 381 U.S. 532 (1965)). Courts "must take such steps by rule and regulation that will protect their process from prejudicial outside interferences," and where prejudicial publicity threatens to impair the right to a fair trial, the "cure lies in those remedial measures that will prevent the prejudice at its inception." *Id.* at 36 (internal citations omitted).

Lawyers that represent clients in pending cases are "key participants" in the proceedings, and because they have "special access to information through discovery and client communications, their extrajudicial statements pose a threat to the fairness of a pending proceeding since lawyers' statements are likely to be received as especially authoritative." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074, (1991) (internal citations omitted). In addition, "the speech of lawyers representing clients in pending cases may be regulated under a less demanding standard than that established for regulation of the press." *Id.* To assure a fair trial, a court can limit the communications between the media and a litigant or lawyer for good cause shown. *See R.J. Reynolds Tobacco Co. v. Engle*, 750 So. 2d 781, 782 (Fla. 3d DCA 2000) (citing *Rodriguez v. Feinstein*, 734 So. 2d 1162, 1164 (Fla. 3d DCA 1999)).

This Court regulates lawyers' extrajudicial statement under Local Rule 77.2, and Local Rule 11.1, which provides that: the "standards of professional conduct of the members of the Bar of this Court shall include the current Rules Regulating The Florida Bar," which includes Rule 4-3.6, Rules Regulating The Florida Bar concerning Trial Publicity. Those rules are in place to ensure that defendants receive a fair jury trial, one that is not tried outside the courtroom in social media or the public eye. *See* Rule 77.2 (g), S.D. Loc. R. and Comments to Rule 4-3.6.

Local rules "serve more than a technical purpose," instead a court's local rules "have 'the force of law.'" *See United States v. Marder*, 183 F. Supp. 3d 1231, 1235 (S.D. Fla. 2016) (citing *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010)); *see also Reese v. Herbert*, 527 F.3d 1253, 1267–68 (11th Cir.2008) ("[Local] rules generally reflect the courts' traditional 'authority to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'").

In this era of instant electronic access to news, social media, and television—all of which is perpetuated online—the protection afforded by Rule 77.2 is even more important.

## RULE 77.2 RELEASE OF INFORMATION IN CRIMINAL AND CIVIL PROCEEDINGS

***

(g) A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates to:

(1) Evidence regarding the occurrence or transaction involved.
(2) The character, credibility, or criminal record of a party, witness, or prospective witness.
(3) The performance or results of any examinations or tests or the refusal or failure of a party to submit to such.
(4) The lawyer's opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.
(5) Any other matter reasonably likely to interfere with a fair trial of the action.

To satisfy the rule, the movant has to show that "a lawyer or law firm satisfy one of subparts [1] through [5], as well as the predicate language, i.e., that there is a 'reasonable likelihood that such dissemination will interfere with a fair trial.'" *See Terry v. Carnival Corp.*, No. 13-20571-CV, 2014 WL 11798519, at *2 (S.D. Fla. Jan. 27, 2014) (quoting *D.L. v. Slattery*, No. 10–61902–CIV, 2011 WL 1303167, at *4 (S.D. Fla. Mar. 31, 2011) (quoting Local Rule 77.2(g)).

Relators' counsel participated in the interview with Katie LaGrone that forms the basis for the "investigative report" (*see* Exhs. 3-6), and discussed the interview and the report on its own website claiming that the investigative report "presents a compelling report on how this nation problem takes advantage of patients and taxpayers." (*See* Exh. 3). The law firm posted inflammatory statements about the case on its Facebook page, and stated for example that: "Medical equipment fraud is a huge problem costing taxpayers billions of dollars every year."

14

(*See* Exh. 1). Each one of these website and social media posts link to the "investigative reports" either on one news website or to all three news websites.

As set forth above, those statements include and concern "evidence regarding the occurrence or transaction involved," (Sub. (1)); the character and credibility of a party, witness, or prospective witness (Sub. (2)); the "lawyer's opinion as to the merits of the claims or defenses of a party" (Sub. (4)); and other matters reasonably likely to interfere with a fair trial of the action (Sub. (5)). Relators' counsel's statements therefore satisfy several of the subparts of the rule. They also satisfy the predicate language in the rule. It cannot be disputed that the statements published on Facebook, TV and websites satisfy the requirement that "a reasonable person would expect [them] to be disseminated by means of public communication," as set forth in Rule 77.2(g).

The remainder of the predicate language in Rule 77.2(g), "i.e., that there is a 'reasonable likelihood that such dissemination will interfere with a fair trial,'" (*see Terry supra*), can be satisfied by a party demonstrating that "the allegedly-harmful statements remain in active circulation, or have otherwise prejudiced or continue to prejudice the community against the defendant." *See Terry v. Carnival Corp.*, No. 13-20571-CV, 2014 WL 11798519, at \*3 (S.D. Fla. Jan. 27, 2014) (internal citations omitted).

As shown above, Relators' and their counsel's statements are not only perpetuated in multiple locations on the internet, but they are repeated, updated, and referenced via active links in later news stories. (*See e.g.* Exhs. 9-10) (Nov. 8, 2018 ABC Action News story linking to a later news story with a link to the original "Investigative Report").  Some of those news stories and posts are disseminated in Palm Beach County through the local news station WPTV News Channel 5 in West Palm Beach. (*See e.g.* Exhs. 4, 14). Some later news stories incorporate parts of the original news story into the later news story thereby republishing statements and actively

15

bringing them before the public and new viewers over and over. (*See* e.g. Exhs. 9-10). Additional Facebook posts by the news stations on at least two of one of the station's Facebook accounts continue to republish links to reports that contain links to the investigative report, and it therefore continues to be in circulation. *Id.* Some of those Facebook posts have received thousands of views, one post received more than 10,000 views, another received nearly 7,000 views, so far. *See supra* at p. 10, and Exhs. 7-8. In addition, those posts were shared by multiple Facebook followers, and received several judgmental negative comments showing the direct prejudicial effect of the inflammatory narrative in the media campaign. (*See* Exhs. 7 at p.2; 8 at p.2; 15). Because all the news stations recycle parts of the story, and also repost links to the original story, the "harmful statements remain in active circulation," and therefore also satisfy the predicate language in the Rule. *See Terry*, 2014 WL 11798519, at *3.

Defendants recognize that trial in this action is scheduled on the November 2019 trial calendar, which seems distant at this time. *See* (DE 69) (Scheduling Order). However, Rule 77.2(g) governs prejudicial extrajudicial statements made by or participated in by a lawyer or law firm "during its investigation or litigation," and is therefore not limited to trial or the immediately preceding period, but contemplates statements made even during the investigation period.

Local Rule 77.2 derives its authority from Rule 4-3.6 of the Rules Regulating The Florida Bar, which governs trial publicity. *See* Comments, S.D. Loc. R. 77.2. The Rule provides:

**RULE 4-3.6 TRIAL PUBLICITY**

**(a)     Prejudicial Extrajudicial Statements Prohibited.** A lawyer shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding due to its creation of an imminent and substantial detrimental effect on that proceeding.

**(b)     Statements of Third Parties.** A lawyer shall not counsel or assist another person to make such a statement. Counsel shall exercise reasonable care to

> prevent investigators, employees, or other persons assisting in or associated with
> a case from making extrajudicial statements that are prohibited under this rule.

The comment to the Rule specifically states that "[p]reserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved." *Id.* If the parties, their counsel, and to some extent the witnesses could not be limited in their extrajudicial statements, then "the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence." *See id.*

A number of Relators' statements would likely not be admissible at trial and tell a very one-sided inflammatory narrative particularly when paired with the investigative reporter's commentary couching Relators' allegations as a multi-million dollar scam, and attempting to legitimize those comments by adding commentary by a random doctor who admits to "zombie-signing." (*See* Exhs. 4-6). The inclusion of the doctor's commentary may also affect or interfere with potential witnesses or future parties to the lawsuits, because Relators are suing 100 "John Doe" physicians alleged to be conspiring with Defendants.

While Relators' counsel did not directly make those comments, they are made possible by the information shared by Relators' counsel and Relators. Rule 4-3.6 also governs statements made by third-parties and mandates that: "A lawyer shall not counsel or assist another person to make such a statement." Being interviewed by the media and employing a media team whose "contacts" have resulted in "national and local media coverage of our cases" qualify as "counseling" or "assisting" another person in making a prejudicial extrajudicial statement.

In addition, posting the news report and video on the law firm's website and Facebook page without any disclaimer, and reiterating the highly inflammatory narrative in writing in the Facebook posts amounts to counsel making the statements themselves. (*See* Exhs. 1-3).

Rule 4-3.6 also requires a lawyer to "exercise reasonable care to prevent investigators, employees, or other persons assisting in or associated with a case from making extrajudicial statements that are prohibited under this rule." Relators' counsel's marketing efforts in employing a media team and participating in interviews as well as republishing news stories and links violate counsel's duty under Rule 4-3.6.

Lawyers' extrajudicial statements "are likely to be received as especially authoritative," and "[m]embership in the bar is a privilege burdened with conditions." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1066, 1074 (1991). In addition, because the "United States is the real party in interest in a *qui tam* action under the False Claims Act even if it is not controlling the litigation," (*Timson v. Sampson*, 518 F.3d 870, 872–73 (11th Cir. 2008)); the Relators—standing in the shoes of the Government—and their counsel, should refrain from turning this action into a social media marketing campaign. Defendants seek an appropriately tailored order establishing the parameters for Relators' and their counsel's (including their media team's) communications with the media or other non-parties.

To be clear, Defendants are not seeking an order directing any news station, media, or press to remove their existing "investigative reports" or their existing social media postings. The First Amendment rights of the media are not implicated here. Defendants are also not seeking a "blanket gag-order" preventing Relators or their counsel from communicating about the case at all. Instead, Defendants are seeking an appropriately tailored order directing Relators, their counsel, and their law firm's in-house "media team" to govern themselves in accordance with the rules and abide by the duties imposed on them by the rules and by the roles they have undertaken in this *qui tam* action.

## II.     DISSEMINATION OF EVIDENCE CONTAINING PHI IS A VIOLATION OF FEDERAL PRIVACY LAWS

The videos posted in the "investigative reports" and disseminated via websites, YouTube, Facebook posts, and the Relators' counsel's website and Facebook posts, show some documents that appear to originate from Defendant AM-Med Diabetic Supplies, Inc. d/b/a Beyond Medical USA. (*See* Exh. 16). Those documents reveal Patient Identification Numbers, Prescriptions Numbers, and Patient Names. *Id.*[3]  The videos also reveal other documents that identify persons' phone numbers and first names. *Id.* It appears Relators, their counsel, or the news station partially redacted those documents, i.e. last names and addresses are redacted or not shown, but other identifying information is still visible. *Id.*

AM-Med is a Covered Entity under the Health Insurance Portability and Accountability Act ("HIPAA"), and it is obligated under the Act's Privacy Rule to protect Medicare and Medicaid Beneficiaries' PHI.[4]   PHI is "any information" in "any form or medium" that is "created or received by a health care provider," and relates to the "past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past,

---

[3]     Exhibit 16 attached to this Motion is redacted to protect the patients' PHI. The gray redactions are those added by the undersigned and were not present when these documents were published in the news reports. The nature of the information redacted is indicated from the context surrounding the redactions.  Upon filing, the undersigned will serve an "unredacted" copy upon Relators' counsel for purposes of Relators responding to this Motion. If Relators—in their response to this motion—can confirm that they have obtained the documents with the patients' authorization to release their PHI, or the patients have waived their privacy rights, then the issue set forth in Section II becomes moot, at this stage. If Relators removed the documents from Defendants' possession, then the Defendants will seek leave to file the documents without redactions under seal for the Court's review at the time Defendants reply to Relators' response.

[4]     A Covered Entity under HIPAA is a health care provider "who transmits any health information in electronic form in connection with a transaction covered by this subchapter." 45 C.F.R §160.103. A health care provider includes a provider of medical or other health services as defined in 42 USC § 1395x(s). *See* 42 USC § 1320d(3). Durable medical equipment is included in that definition in 42 USC § 1395x(s)(6), making AM-Med a Covered Entity under HIPAA.

present, or future payment for the provision of health care to an individual." *See* 45 C.F.R. § 160.103.

If Relators improperly removed some of the documents shown from Defendants' possession in violation of Defendants' policies, then the disclosure to third parties and ultimately to the public would violate those patients' privacy rights, and potentially expose AM-Med to liability, and expose Relators to liability for the improper removal.  HIPAA provides for a "whistleblower exception" that allows disclosure by a relator to either a "health oversight agency or public health authority or to an "attorney retained by or on behalf of" the relator. *See* 45 C.F.R. § 164.502. However, investigative reporter Katie LaGrone does not fall into either of those categories and the resulting exposure of the information to the public through television and social media would also be a violation of the privacy rule.

Defendants seek an order directing Relators to maintain the confidentiality of any PHI, and to the extent it is within their control to limit the exposure of any PHI they have shared with non-parties already, and to return any documents and information obtained from Defendants outside the procedural safeguards of the discovery process in this action.

## CONCLUSION

Thus, for the foregoing reasons, this Court should enter a protective order directing Relators to return any documents removed from any of the Defendants, remove links and news stories from Relators' law firm's website and Facebook posts, and to compel compliance by Relators and their counsel with the local rules of this court in whatever manner the Court deems appropriate.

## CERTIFICATE OF GOOD FAITH CONFERENCE

The undersigned counsel conferred via telephone with Sean Estes, Counsel for Relators, on November 19, 2018, in a good faith effort to resolve the issues raised in this motion. The parties were unable to resolve the issues and Relators oppose the relief requested in the motion.

Respectfully submitted,

GABRIEL L. IMPERATO
Florida Bar No. 623652
CHRISTINA LEHM
Florida Bar No. 112596
NELSON MULLINS BROAD AND CASSEL
One Financial Plaza, Suite 2700
100 S.E. Third Avenue
Fort Lauderdale, Florida 33394
Telephone: 954-764-7060
gabriel.imperato@nelsonmullins.com
christina.lehm@nelsonmullins.com

By: /s/ *Gabriel L. Imperato*
        GABRIEL L. IMPERATO

By: /s/ *Christina Lehm*
        CHRISTINA LEHM

Counsel for Defendants,
AM-Med Diabetic Supplies, Inc.
David Soblick, Robin Soblick,
Keith Aronoff, MBKD, LLC, and
AJT Diabetic, Inc., d/b/a Countrywide Medical

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of November 2018, the foregoing document is being served on all counsel of record or parties listed below, via transmission of Notices of Electronic Filing generated by CM/ECF. In addition, a copy of the unredacted Exhibit 16 will be served on all counsel of record via electronic mail.

By: /s/ *Christina Lehm*
        CHRISTINA LEHM

21

David Scher
(*pro hac vice*)
Robert Scott Oswald
**Employment Law Group PC**
888 17th Street
Suite 900
Washington, DC 20006
202-261-2806
dscher@employmentlawgroup.net
soswald@employmentlawgroup.net
Counsel for:
Plaintiffs Daniel Yarbrough and
Codi Fletcher

John C. Spaccarotella, AUSA
**United States Attorney's Office**
99 N.E. 4 Street
Miami, FL 33132
305-961-9212
john.spaccarotella@usdoj.gov
Counsel for:  United States of America

Gabriel L. Imperato
Christina Lehm
**Nelson Mullins Broad and Cassel**
One Financial Plaza, Suite 2700
100 S.E. Third Avenue
Fort Lauderdale, Florida 33394
954-764-7060
gabriel.imperato@nelsonmullins.com
christina.lehm@nelsonmullins.com
Counsel for Defendants:
AM-Med Diabetic Supplies, Inc.
David Soblick, Robin Soblick,
Keith Aronoff, MBKD, LLC, and
AJT Diabetic, Inc., d/b/a
Countrywide Medical

Sean Estes
Jessica Lee Hoyer
**James Hoyer, P.A.**
2801 West Busch Blvd.
Suite 200
Tampa, FL 33618
813-375-3700
sestes@jameshoyer.com
jlhoyer@jameshoyer.com
Counsel for:
Plaintiffs Daniel Yarbrough and
Codi Fletcher

David S. Weinstein
**Hinshaw & Culbertson, LLP**
2525 Ponce de Leon, Blvd, 4th Floor
Coral Gables, FL 33134
305-428-5038
dweinstein@hinshawlaw.com
Counsel for Defendant Christian McKeon

22

4852-6427-8138.2
50364/0003