UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Civil No. 15-81520-CIV-Marra/Matthewman

UNITED STATES OF AMERICA and
the STATE OF FLORIDA ex rel.
DANIEL YARBROUGH and ex rel.
CODI FLETCHER,

    Plaintiffs,

vs.

AM-MED DIABETIC SUPPLIES, INC. d/b/a
BEYOND MEDICAL USA, et al.,

    Defendants.

_____/



FILED BY ___ D.C.

JAN 25 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## ORDER DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION FOR A PROTECTIVE ORDER [DE 79]

**THIS CAUSE** is before the Court upon Defendants, AM-Med Diabetic Supplies, Inc. d/b/a Beyond Medical USA, David Soblick, Keith Aronoff, Robin Soblick, MBKD, LLC, and AJT Diabetic, Inc. d/b/a Countrywide Medical's ("Defendants") Motion for a Protective Order ("Motion") [DE 79]. This matter was referred to the undersigned by United States District Judge Kenneth A. Marra. *See* DE 89. The United States of America and the State of Florida ex rel. Daniel Yarbrough and ex rel. Codi Fletcher ("Relators"), have filed a response [DE 86], and Defendants have filed a reply [DE 87]. The Court held a hearing on the Motion on January 23, 2019. The Motion is now ripe for review.

### I.    Defendants' Motion

Defendants are seeking a protective order to stop Relators and their counsel, James Hoyer, P.A., from disseminating extrajudicial statements and from publicly sharing Medicare

beneficiaries' Protected Health Information. [DE 79, p. 1]. Defendants also request that the order direct counsel to remove Facebook and website posts containing extrajudicial statements and Protected Health Information. *Id.* Defendants claim that news stations have repeatedly published documents on television, social media, and news websites that, while partially redacted, still reveal the identity of the patients. *Id.* at p. 2. Defendants also claim that Relators' counsel have shared the same information on their law firm website and on Facebook. *Id.* According to Defendants, the media campaign interferes with Defendants' fundamental right to a fair jury and violates Local Rule 77.2(g) and Rule 4-3.6 of the Rules Regulating the Florida Bar. *Id.* Defendants further argue that dissemination of information containing Protected Health Information is a violation of HIPAA. *Id.* at p. 19.[1]

## II. Relators' Response

In response, Relators explain that their story earned interest from a career investigative journalist in the fall of 2018. [DE 86, p. 7]. According to Relators, the story the journalist wrote focused on two actual victims of the fraud and a doctor who inadvertently facilitated the fraud. *Id.* Only 52 seconds of screen time were devoted to Relators. *Id.* Relators contend that the printed and video versions of the story reference Relators' "allegations" and state that Relators "allege" or are "accusing" their former employers of misconduct. *Id.* at p. 8. Relators argue that Relators' counsel posted a "factual description of the national problem of [durable medical equipment] fraud, Relators' involvement with the story, and links to the story on its website and Facebook page." *Id.* According to Relators, very few users have accessed the web page and Facebook post. *Id.*

---

[1] The HIPPA argument was abandoned on Defendants' reply. [DE 87, p. 11].

2

Relators further argue that Defendants (1) cannot meet their burden of establishing good cause for a protective order, (2) have not met the extrajudicial statement predicate required by Local Rule 77.2 in that Defendants cannot show that the existence of an actual extrajudicial statement and cannot establish a reasonable likelihood that such dissemination of an extrajudicial statement would interfere with a fair trial, and (3) have not established a violation of the Florida Bar Rule 4-3.6. [DE 86, pp. 11-16]. Relators also contend that, since the documents in question are public records obtained by the Florida Office of the Attorney General in response to a public records request, Defendants' request for Personal Health Information relief is moot. *Id.* at pp. 16-17.

### III. Defendants' Reply

Defendants argue that Relators have escalated the very conduct Defendants complained of in their Motion by unnecessarily attaching the 132-page response to the public records request to their response to the Motion. [DE 87, p. 1]. Defendants next assert that Relators have misinterpreted and unreasonably limited Local Rule 77.2(g) and that Defendants have met the requirements of the Rule. *Id.* at pp. 2-6. Defendants point out that West Palm Beach news stations have posted about the case, which could impact a jury. *Id.* at pp. 6-7. Defendants contend that the news story rests on the investigation of Relators' counsel, which allows counsel to control the facts presented to the public. *Id.* at pp. 8-10. Finally, Defendants abandoned their prior argument about the disclosure of Personal Health Information.[2] *Id.* at p. 11.

---

[2] Defendants' counsel confirmed at the January 23, 2019 hearing that they have abandoned this HIPAA argument.

## IV. Discussion

**A. Applicable Law**

Federal Rule of Civil Procedure 26(c)(1) provides that a party or any person may move for a protective order, and the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." The party seeking the protective order has the burden to provide the Court with "good cause" for the protection sought. Fed. R. Civ. P. 26(c). "Good cause" has been defined as a "sound basis or legitimate need to take judicial action." *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1277 (S.D. Fla. 2008) (citing *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1985)). The party requesting a protective order must make a specific demonstration of facts in support of the request. *Id.* A court must then balance the competing factors involved in determining whether good cause has been shown. *Id.* (citing *Farnsworth v. Procter & Gamble, Co.*, 758 F. 2d 1545, 1547 (11th Cir. 1985)).

In this case, Defendants assert good cause based on Relator's alleged violation of Local Rule 77.2.[3] Under Local Rule 77.2(g),

> A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates to:
>
> (1) Evidence regarding the occurrence or transaction involved.

---

[3] Defendants did not make any argument at the January 23, 2019 hearing about a possible violation of the Rules Regulating the Florida Bar as the basis for their motion for protective order. They limited the issue to whether Local Rule 77.2 had been violated. The Court has independently considered Rule 4-3.6 of the Rules Regulating the Florida Bar and finds that Defendants have not violated the Rule at this juncture for the same reasons Defendants have not violated Local Rule 77.2 at this juncture, as further explained in this Order.

4

> (2) The character, credibility, or criminal record of a party, witness, or prospective witness.
>
> (3) The performance or results of any examinations or tests or the refusal or failure of a party to submit to such.
>
> (4) The lawyer's opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule.
>
> (5) Any other matter reasonably likely to interfere with a fair trial of the action.

S.D. Fla. L. R. 77.2(g).

There are a limited number of cases regarding the issue at hand out of the Southern District of Florida. The Court has carefully reviewed the following cases: *United States v. Fiorentino*, No. 14-20025-CR, 2014 WL 1877411, at *2 (S.D. Fla. May 9, 2014); *Terry v. Carnival Corp.*, No. 13-20571-CV, 2014 WL 11798519 (S.D. Fla. Jan. 27, 2014); *Garcia v. Chapman*, No. 12-21891-CIV, 2013 WL 12061867, at *1 (S.D. Fla. Oct. 22, 2013), *report and recommendation adopted*, No. 12-21891-CIV, 2013 WL 12061868 (S.D. Fla. Nov. 15, 2013); *Garcia v. Chapman*, No. 12-21891-CIV, 2013 WL 12061868, at *1 (S.D. Fla. Nov. 15, 2013); *D.L. v. Slattery*, No. 10-61902-CIV, 2011 WL 1303167, at *1 (S.D. Fla. Mar. 31, 2011); *Rossbach v. Rundle*, 128 F. Supp. 2d 1348 (S.D. Fla. 2000); *United States v. Hernandez*, 124 F. Supp. 2d 698, 702 (S.D. Fla. 2000); and *United States v. Gonzalez*, 85 F. Supp. 2d 1306 (S.D. Fla. 1999).

**B. Analysis**

The Court has carefully reviewed the Motion, response, reply, the relevant case law, and the applicable rules. The Court is somewhat troubled by the language on Relators' counsel's website. The website states in relevant part, "[w]e believe getting control of the facts is the best game plan for success...James Hoyer's full-time investigators and our Emmy-winning media team give your *qui tam* whistleblower case unparalleled authority." [DE 79-2]. The website also

contains a link to an investigative news report and states, "[a] powerful investigative report appearing on several Florida TV stations is exposing the alarming problem of medical equipment fraud, which costs taxpayers billions of dollars every year...Two whistleblowers represented by the James Hoyer law firm were interviewed and shared their stories to help expose the problem." *Id.*[4]

Additionally, Relators' counsel posted a link to the investigative news report on James Hoyer, P.A.'s Facebook page. [DE 79-1]. Counsel further posted the following commentary on October 10, 2018:

> Billing taxpayers for medical supplies sent to dead people, endlessly harassing patients to buy supplies they don't want. Medical equipment fraud is a huge problem costing taxpayers billions of dollars every year. This is a huge problem costing taxpayers billions of dollars every year. Check out this excellent Investigative Report where two whistleblowers represented by James Hoyer are interviewed to help expose the issued.

*Id.* Counsel also posted on the same date, "[b]e sure to check out this powerful investigative report on the nationwide problem of medical equipment fraud. Whistleblowers expose the troubling abuse. It's costing all taxpayers a lot of money!" *Id.* In the media report posted on Relators' counsel's website and Facebook page, the two Relators in this case, Daniel Yarbrough and Codi Fletcher, directly address evidence regarding the occurrence or transaction involved in this litigation. To the extent that Relators' counsel, James Hoyer, P.A., participated in this extrajudicial statement, Local Rule 77.2(g)(1) is implicated.

Taking into account the language on the firm website and Facebook page, and the fact that Relators were interviewed by the investigative journalist at Relator's counsel's law firm for the story which was then posted on Relators' counsel's law firm website and Facebook, it appears

---

[4] These two alleged "whistleblowers," Daniel Yarbrough and Codi Fletcher, are the Relators in this case.

6

arguable that Relators' counsel may have orchestrated a media campaign about this case. Although Relators' counsel dispute that they orchestrated any media campaign in relation to this case, Relators' statements come precariously close to violating Local Rule 77.2(g) and may cross the line established by that Local Rule.

However, given that the posts were made in October 2018 and the jury trial in this case is set for November 12, 2019, the Court simply cannot find, at this juncture, that Defendants have established sufficient good cause for a protective order that forces Relators' law firm to take its posts off its website and Facebook page. "Courts in this district have previously explained that a party must demonstrate that the allegedly-harmful statements remain in active circulation, or have otherwise prejudiced or continue to prejudice the community against the defendant, in order to substantiate the 'Google mistrial' fear." *Terry*, 2014 WL 11798519, at *3; see also *D.L.*, 2011 WL 1303167, at *5 (finding that, while "extrajudicial statements at issue are undoubtedly archived indefinitely in an online digital format, as are most news stories and press releases in this digital age," defendants are still required to make a sufficient showing that the statements remain in active circulation, or have prejudiced or continue to prejudice the community against the defendants, creating a reasonable likelihood that they cannot receive a fair trial.).

Defendants have not identified a single case in the Southern District of Florida, and the Court has not find a single case in the Southern District of Florida, through its own independent research, that has granted the relief sought by Defendants. Here, Defendants cannot meet their burden of showing that posts from October 2018, even if still in circulation now in January 2019, are reasonably likely to interfere with a fair trial of this action in late 2019 or even 2020 if the trial gets delayed.

The Court does find, however, that, in light of the fact that Relators' counsel posted on their web page and on social media, the posts at issue could gain more prominence as the case gets closer to trial. In other words, the posts could later impact Defendants' right to a fair trial. While the Court will not order Relators' counsel to remove their posts at this point, the Court's ruling is without prejudice to Defendants' ability to renew their motion closer to trial if they can establish a violation of Local Rule 77.2(g) and also establish good cause for a protective order.

Finally, while the Court will not enter a protective order at this point, the Court does encourage Relators' counsel, who are officers of the court, to review their website and Facebook page and determine whether counsel believe it is appropriate to modify or remove all or portions of the posts at issue.[5] Relators' counsel should keep in mind that, as this case gets closer to trial, an issue may arise under Local Rule 77.2(g). This Court does not want any issues of pre-trial publicity occasioned by any party's counsel to impact the fair trial rights of any party to this case. The Court wants this case to be litigated and tried in court, not on social media.

Based on the foregoing, it is hereby **ORDERED** as follows:

1. Defendants' Motion for a Protective Order [DE 79] is **DENIED WITHOUT PREJUDICE** to Defendants having the ability to renew their motion closer to trial in this case if Defendants have a good-faith basis to do so.

2. Counsel for all parties in this case are directed to strictly abide by the letter and spirit of Local Rule 77.2 and the Rules Regulating the Florida Bar in this case. All counsel are hereby advised that the Court will be strictly enforcing Local Rule 77.2 on an ongoing

---

[5] The Court also notes that the law firm's claims on its website that "getting control of the facts" and then utilizing an "Emmy-winning media team" to "give your *qui tam* whistleblower case unparalleled authority," in conjunction with other comments, could arguably be subject to scrutiny under the Florida Bar advertising guidelines. *See* Rules 4-7.13, 4-7.14, and 4-7.15 of the Rules Regulating the Florida Bar. The Court makes no finding in this regard, but notes that it is Relators' counsel's duty to ensure compliance of its advertising efforts on its website and social media with the Florida Bar. *See* Rule 4-7.19 of the Rules Regulating the Florida Bar.

basis, and any violation of the Local Rule may result in contempt proceedings and further sanctions.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 25th day of January, 2019.

WILLIAM MATTHEWMAN
United States Magistrate Judge